And we note at the outset that you were appointed under the Criminal Justice Act. I was, Your Honor. And the Court wants you to know, as we said to counsel earlier, that we deeply appreciate your willingness to accept the assignment. It's always an honor to appear in front of the circuit. You may proceed. May it please the Court, counsel for the government. Mr. Bryant believes the district court made three critical errors when it came to his sentencing. He admitted his guilt through an open plea, but he finds the district court made reversible error in three of its findings. First finding that Mr. Bryant conducted what the court believed constituted attempted murder. The second erroneous finding was that the victim was rendered unconscious during the act of the kidnapping. And the third is that the victim suffered a life-threatening bodily injury. And I'd like to start with the third element. I couldn't find any circuit court case involving kidnapping and strangulation involving something less than death. But I did find a second case called the United States versus Spinelli, a 2003 decision that talked about what the court should look at in a case where it's claimed the victim suffered a life-threatening bodily injury. The second circuit held that when discussing the four-level enhancement that was also applied in my client's case, in addition to the kidnapping, you look at the commentary and in section 1B1.1 of note one of the United States sentencing guidelines, you look at the, you look to the circumstances of the commission of the act, but that's not what determines whether or not the victim had received a life-threatening bodily injury. You look at only what happened to the victim, not the circumstances as to what the assailant did. And what, in this case, for example, in particular, what did the facts show that your client did in terms of choking or strangling, trying to strangle this woman? It depends which side you ask. My client believes he did, in fact, put an arm or hands over the victim's neck and started squeezing. But the victim did not testify at the sentencing hearing in this case. But the government's expert, Dr. Snell, the only expert I believe who testified at that sentencing hearing, stated that, went on to say that strangulation pressure in this case was released in an early stage. The victim never went to the hospital or sought medical care during the day of the strangulation. Or at any time thereafter, to my knowledge. And Dr. Snell stated that he had not viewed any evidence to indicate that the victim did not have a full recovery in this case. So does the potential, do the potential ill effects become irrelevant if they didn't come about? Well, in other words, no foul, no harm? It's. Or no harm, no foul? Well, there was certainly foul. He pled guilty to the kidnapping and was given a very heavy sentence. But when we're looking at the issue of whether or not the victim suffered a life threatening injury, life threatening bodily injury, that is a very appropriate. We know that the victim, if she became unconscious at all, my client doesn't believe she did. And there was no evidence to indicate that. And in fact, Dr. Snell, who is a very highly qualified and respected forensic examiner and a court and a coroner in Sioux Falls stated that he agreed to have no medical evidence to suggest that the victim was unconscious at any time. And even if she was unconscious for a short period of time, because she was awake when the law enforcement took her out of the car, she was conscious. And even though that car had been surrounded by many law enforcement officers out at the site where the kidnapping was stopped. What about the terror inducing effects of strangulation? That's not, I don't believe that fits. In your brief, your sub C is entitled double counting, which is a legal concept, not a factual concept. The double counting issue is present even if she suffered a life threatening injury, if that's, if that doesn't add anything to the attempted murder Well, I believe you're, what you're arguing. I didn't get out of, I believe you're, you're talking about the second issue, not the issue I'm presenting today, but, but wait a minute, you, you didn't have any case law that, that addressed judge Wollman's point as to whether, as to whether terrorized, you can be so terrorized terror, terrorizing can be a life threatening. Well, I believe I did. I cited the Spinelli decision, which stated, you quoted Spinelli. Well, and, and attempted murders are by definition life threatening. No, which was a double counting position. I don't believe Spinelli found that the Spinelli court stated that there are two circuits that have considered this question and have unequivocally, unequivocally held that the resulting injury to the victim is the sole determinant and determining what enhancements are justified. And it quite, Spinelli decision is a 2003 decision from the second circuit. But it also, well, there are two. There's one from the sixth circuit and the other is from the eighth circuit. And I believe judge Wollman rendered the court. No, I'm just, I'm just reading from the Spinelli decision, which was, but the Spinelli decision also quoted the United States versus Dotson, which was a 1997 decision out of the eighth circuit. Going back to your argument, essentially, that the severity doesn't support that. Well, there's evidence in this case, you know, that's evidence of, of, of a substantial force strain, which is evidence of a hemorrhaging in the small blood vessels close to the eyes. And there's ocular hemorrhaging that takes place and that is all, you know, doesn't happen if you're just in front of the bill, sort of, I, I told my brother while we were wrestling in the backyard. Well, I believe there were two, maybe more, but Dr. Wollman's ultimate decision of, he agreed that no medical evidence to suggest that the victim was unconscious or had suffered a life-threatening injury. And when you look to the definition of life-threatening injury, you go to section 1.1.1.1J of the United States Sentencing Guidelines, that means an injury involving substantial risk of death. And in kidnapping, they specifically stated in the commentary, maltreatment to a life-threatening degree. And then they gave a couple examples, such as the denial of food or medical care. Just because you have a couple of petechiae in, in one of the eyes, doesn't prove unconsciousness or that the person suffered a life-threatening injury. Not to be flippant about this, but as I read your cross-examination of Dr. Snell, it was almost as if you were trying to establish that this was a benign form of strangulation. No harm, really. Well, like a benign, like a benign tumor. It's bad, but it's not that bad. In other words, again, there's a potential, as you point, as Dr. Snell pointed out, if you get up past a certain number of minutes, you're going to have irreversible brain damage. Well, with no disrespect, but I don't think that's a fair comparison here, the victim did not lose consciousness, did not sustain any significant bodily injury, did not seek medical attention at her time. And my client believes that at no time was the victim accosted with any kind of a life-threatening injury. Fortunately for the victim, I believe she didn't lose consciousness, but in addition to that act, she didn't need medical care. She didn't seek medical care at the time, on the day of the crime or thereafter. And when you have a very highly regarded coroner and forensic pathologist say he saw no evidence that she had suffered unconsciousness and therefore a possible life threatening injury. We feel that when the court went from the kidnapping offense at the time of sentencing and then jumped over to the attempted murder section of the guidelines, that that was unfair to my client and was clear error. And then on top of that, to get to Judge Loken's question, he received a four level enhancement because of the supposed life-threatening injury. And we, at that point, we, we alleged that that was double counting and there is a case. That in Spinelli, they stated an attempted murder involved in that case, where the victim fortunately did not suffer any serious injury. It says the attempted murders are by definition, life-threatening. One could subject every attempted murder to a four level increase enhancement for life threatening bodily injury. Regardless of the injuries that were actually suffered by the victim, the second circuit court felt that was wrong. In fact, reverse the sentence, remanded for resentencing, because that was double counting. You look to actually what happened to the victim. And you're aware of our frequent struggles with the double counting concept and the way we've resolved them. I am. I feel so. There has to be, there has to be complete overlap between the, the, the elements of the guideline provisions as applied to the defendant before you even have an arguable double counting situation. I, I, we, we probably haven't found double counting since the guidelines became advisory. Well, that's. Yes. For good reason. Because, because double counting can always be taken into account by the trial court in, in applying the advisory guidelines. The judge, that doesn't mean it didn't happen. We believe that this case involved double counting. Beside taking it out of the. All right. So the, but, but double counting is never more than a procedural error under, under the advisory guidelines. So now it can be harmless. Well, it's possible that it could be harmless, but it wasn't certainly harmless to my client. He not only lost the. Well, what's, what's your best advisory guidelines, double counting case? My best advisory guideline? The eighth circuit case that conclude that, that found procedural error because of double counting under the advisory guidelines, therefore supports your position. Honestly, I couldn't find an eighth circuit court case that involved kidnapping and strangulation. No, I didn't say it involved kidnapping and strangulation. I understand every, every criminal case virtually is unique. We had lots of, we had a number of double counting reversals under the mandatory guidelines. And of course, the same principle has been argued under the advisory guidelines and in my recall, almost always, if not always rejected. So I'm asking you, what's an advisory guidelines, eighth circuit case involving any alleged guidelines, double counting in which we have sustained the argument. I could find no similar eighth circuit court case that involved double counting. Did you find any eighth circuit case? No, I did not. Okay. Well, we still insist that once you take it out of kidnapping and you Which I think is a violation in itself. But, and then on top of that, you use a four level enhancement. And again, why was it an error to charge it as attempted homicide or attempted murder? Well, the judge made a, made a finding that it was appropriate pursuant to the pre-sentence report, investigation report that had found that and she agreed. And then she thought it was appropriate rather than start with a base offense level under kidnapping, she started with the base offense level under attempted murder, and then if that wasn't bad enough for my client, then it was doubly terrible for him because then she used a four level enhancement. Now you make the sixth amendment argument under Apprendi. That of course goes nowhere after Booker. I understand. I understand. I did not, I don't believe I made that argument in the briefs, but I don't believe I made this. It wouldn't be in my notes if you didn't argue it. You said you didn't cite Apprendi in the briefs? No. Well, I did, but under a different, under a different situation. I alleged, I talked about Elaine versus United States, the U.S. versus Booker, and then Apprendi versus New Jersey. And that specifically, I thought I had mentioned in the brief. The district court is violating a sixth amendment right to a jury trial to prove he committed all the essential elements of such an offense beyond a reasonable doubt, see Booker, Elaine, and Apprendi. Yeah, but, but that goes to when you switch from the kidnapping based offense level to the, to the attempted murder. Right. And I don't believe that was applicable. But, but, but that doesn't have to go to a jury. Well, right. What, what my client would argue. There's no sixth amendment violation if it, if it's not a jury issue. Well, that's, you know, the right to an attorney, but, yeah, and, and a jury trial. And my client. Apprendi was a jury trial case. Right. Booker, Booker said Apprendi doesn't apply to these kinds of issues because it's a, they're, they're sentencing findings, determinations. I see that my time is out. Could I answer? Yes. Do you want to complete your answer or? Yes. If you clarify the argument. Yes. I was simply trying to state that my client felt that when you went to attempted murder, one of the basis for the court's clear air and heard findings was that all of a sudden he's found to have committed attempted murder without pleading guilty to it, he didn't plead guilty to attempted murder. And in a way that is finding them guilty, even though he didn't have a jury trial on that charge, he pled guilty to kidnapping. Very well. We'll give you a minute or two or two on rebuttal in light of our questions. Thank you, Your Honor. We'll hear from the government. Morning, Your Honor. You may proceed. May it please the court, counsel, I'll address the last point first. He talked about uncharged conduct and violation of his constitutional rights, but the constitutional rights of the defendant are not violated if the conduct is proven at sentencing, the burden of proof is lower, the preponderance by the, of the evidence that can go to several things. One is relevant. You don't have to spend a lot of time on that. Relevant conduct. That we've got, well, we've got 12 years of precedent. So Spinelli involved a mob hit and there's a result determinative argument here where if there isn't blood and guts and gore that, and it's, if it's not a physical energy injury that are, that's manifesting itself outwardly, it cannot equate to substantial risk of death. That was not the case here. But what was the case is that we had internal injuries that did manifest themselves in a slight degree, albeit, but those were very serious injuries internally. She, consistent with Judge Erickson, your, your comments on the life threatening injury of being strangled, she was strangled to unconsciousness. The, she had several petechia, her eyes rolled back in the head. She had ruptured caps, capillaries. And according to Dr. Snell, because of the loss of consciousness, she had a lack of oxygen to the brain. Now in Dr. Snell's testimony, he considered numerous exhibits, exhibits 10 through 20 showed the physical manifestations of, of the injuries that were sustained by the victim. In pages 117 through 118, he talked about the pressure buildup in the capillaries, which caused those capillaries to rupture. There's no, there is hypoxia, meaning there's no oxygen to the brain. The next step in that is a loss of consciousness. Now, all of those things were present here and the substantial risk of death at page 137 of the sentencing transcript show that a loss of consciousness equates a substantial risk of death under the sentencing guidelines under section 1.1B1.1. Now, curiously, in the commentary, it's cited as an example of kidnapping. The example is lack of food and maltreatment to a degree that would equate to a life-threatening injury. Well, I'd submit that the lack of oxygen is similarly a life-threatening bodily injury that was found by the district court, and appropriately so. A fact supporting this — What's the actuality of the harm that this person suffered? She lost consciousness, which is supported by the defendant's own admissions in a phone call, a recorded phone call to his mother. He said that he saw her eyes roll back in the back of her head. Dr. Snell, with those facts, supported a finding of loss of consciousness at the district court in those pages that I cited. Now, I would say that Spinelli was a result-determinative case out of the Second Circuit. We had basically a mob hit on a woman who was shot, but the injuries that she sustained were not to the degree — physical injuries that she sustained were not to the degree that would — that would merit the four-level enhancement. However, the court of appeals remanded for additional findings on Judge Woolman, I think to your question, the non-physical nature of her injuries, whether it's psychological or emotional harm, merits such an enhancement under the guidelines. I thought you said at the outset Spinelli was a no-injury case. So the — so the victim — That's not true. It was a — It is not — it is not true. It was — it was — there was physical injury in Spinelli that the court found insufficient to meet the guidelines. The number of — the number of levels that the district court had enhanced, the physical injury was there, but not to the degree that would support the four levels. But there were physical injuries. She was shot. Fortunately for her, when she was shot, the bullet ricocheted off her back, and she spent very little time in medical care. Now, aside from the physical injuries, she sustained several non-physical injuries. So what were the level of options that the district court had? Two and four. And were they considered — The district court applied the four-level enhancement. Was it arched? I don't know at the district court level, Judge. I don't know. She did sustain physical injury, whether it was substantial or life-threatening. The pre-sentence report recommended the four-level. In Spinelli? No, here. Oh, yes, absolutely. And the objection was to — that the four-level ought to be two, or that the four — only that the four-level ought to be none? Zero. None. So there's nothing in the record showing whether the district court did or did not consider the two-level alternative? The two-level enhancement was not considered by the district court, as I read the record. Why isn't that — doesn't have to be plain error. The objection preserved the error. Why isn't that — why don't we need to consider whether this was a two-level injury? I think the testimony on the record supports the life-threatening injury. I know you do, but I — we may not agree with you. We may agree that there was physical injury, but then wonder whether it qualified for four-levels. Can we take that up? Is that preserved? No, I think the standard of review is clear error. And I think the district court had sufficient — more than sufficient facts to find the facts that supported the four-level enhancement of life-threatening injury. And due deference is provided to the district court in its findings of that. I think it's very interesting, and it ties into my — my trouble with the double-counting argument. I saw it was arguable, but I don't think the district court can find it. To me, the Second Circuit is — it makes all kinds of common sense when it says attempted murders are, by definition, life-threatening. So, now, why doesn't that almost establish double-counting? So, I think without a job of attempted murder, most instances that I can conceive are life-threatening. All right, so take our double-counting jurisprudence we've addressed multiple times on top of the standard of the court's analysis of double-counting. None of that's in your brief. So, take our jurisprudence and apply it to these two enhancements and tell me in lawyer-like terms why this isn't double-counting under the case law. Well, it's — it is not double-counting for the reasons that you cite. We're talking about attempted murder and a substantial risk of death. The rub is substantial — But attempted murder always creates — always is an attempt at substantial risk of death. I missed the — it's a substantial risk of death, but we're talking about a substantial injury. All right, so we have attempted murder, and, of course, that's going to be called attempted murder because it's some sort of life-threatening event. But the rub is the life-threatening injury that allows for the four-level enhancement. Now, the double-counting is — the double-counting — the double-counting in Spinelli undercuts the district court and the court of appeals application of this result-determinative analysis for the injuries that were sustained or not sustained by the victim in that case undercuts the double-counting argument made in this case. It clearly demonstrates that you could apply that four levels even though there's a life-threatening event. That doesn't necessarily mean you have a life-threatening injury. Here we have both. We have facts that support both. The district court considered those facts in announcing its sentence. And due deference is applied — appropriate for the district court to apply the guidelines to the facts. Now, we have these separate and distinct facts that support the enhancements. One, you have the attempted murder, which I think at the district court level, his petition and statement of factual basis submitted in support of his petition go to substantial steps in establishing the attempted murder. You then have the acts that take place out on the abandoned farmstead in Garrison, South Dakota. There you have the conduct of the defendant where he strangles her to unconsciousness, renders her unconscious, his observations of the victim, of her eyes rolling back in her head, and those things. While those, of course, have some overlap — they're overlapped with these lists, they're not completely overlapped. And there is no double-counting argument. And I'll say at the sentencing hearing, while just about everything was objected to, there was no legal objection that the district court was engaging in double-counting when considering the four-level enhancement. I'll go back quickly, Your Honor. The case that was cited out of the Eighth Circuit that was dealing with the first issue raised by the appellant and that was cited in Spinelli was the Dodson case out of the Eighth Circuit. It's true that that was a case in the Eighth Circuit that was remanded for additional findings about physical injury, but it was because the record was devoid of any facts supporting the enhancement. The quote-unquote evidence that the district court relied on in that case was merely and only the pre-sentence report. There was nothing offered. That is definitely not the case here. We had multiple witnesses testifying about the degree of injury and the consistent assault, the constant assault, the reckless endangerment, and the facts that gave rise to this case in the first place. Your Honor, I'm happy to address any other questions that the Court may have for me on the issues raised on appeal. I'd ask that the Court, this Court, affirm the district court sentencing. Very well. Mr. Ehrenberg, we'll give you a couple of minutes on rebuttal. Just because the victim was injured in this case does not mean she suffered a life-threatening bodily injury. That is defined as an injury of substantial risk of death, loss of substantial impairment of function of a bodily member, organ, or a member or a mental faculty that is likely to be permanent. There was no evidence that the government produced at the sentencing hearing that shows that the victim in this case, unfortunately, did not suffer a life-threatening bodily injury. Dr. Snell stated that he had not viewed any evidence to indicate that Ms. Woods did not have an immediate and full recovery. If she was unconscious at all. And in his opinion, you know, if my client had applied pressure to the neck area, at most it was only for a few seconds because she had an immediate and full recovery. That is not a life-threatening bodily injury. I don't have a guidelines manual with me. What's the definition for the two level? Is that just bodily injury? I don't have that marked off, Your Honor. And if it's something, if it's injury but short of life-threatening, was that argued to the district court? No. It was certainly an all or none type of an argument made by me that no aggravating factor, no upper level enhancement should have been made under this case. Thank you for the argument. The case is now submitted and we will take it under consideration.